UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Constitution Pipeline Co., LLC,**

**Plaintiff,**

**-v-**                                            **1:14-CV-2048 (NAM/RFT)**

**A Permanent Easement for 0.05 Acres And Temporary**
**Easements for 0.52 Acres In Summit, Schoharie**
**County, New York, Tax Parcel Number 123.-4-3.12;**
**George E. Gabrielsen, and Georgia A. Gabrielsen,**

**Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Saul Ewing LLP
Elizabeth U. Witmer, Esq., of counsel
1200 Liberty Ridge Drive, Suite 200
Wayne, Pennsylvania 19087-5569
and
Stockli, Slevin and Peters, LLP
John P. Stockli , Jr., Esq., of counsel
1826 Western Avenue
Albany, New York 12203
and
Saul Ewing LLP
Sean T. O'Neill, Esq., of counsel
Saul, Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
and
Hiscock & Barclay LLP14-2018
Yvonne E. Hennessey, Esq., of counsel
80 State Street
Albany, New York 12207
Attorneys for Plaintiff

Farrell, Fritz PC
Jon N. Santemma, Esq., of counsel
1320 RXR Plaza
Uniondale, New York  11556-1320
Attorney for Defendants

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On December 2, 2014, the Federal Energy Regulatory Commission ("FERC") issued an Order which, *inter alia*, authorized plaintiff Constitution Pipeline Co., LLC ("Constitution") to construct and operate approximately 124 miles of new 30-inch diameter natural gas pipeline ("the Project"). The FERC Order granted to Constitution a certificate of public convenience and necessity ("FERC certificate") under the Natural Gas Act ("NGA"), 15 U.S.C. § 717f. The NGA grants private natural gas companies the federal power of eminent domain where they hold a FERC certificate and either cannot acquire property by contract, or are unable to agree with the owner of the property on the amount of compensation to be paid for a necessary right of way for the transportation of gas. *Id.* at § 717f(h).[1] District court has jurisdiction in such cases when the amount claimed by the owner of the property to be condemned exceeds $3,000. Thus, "[o]nce a [certificate of public convenience and necessity] is issued by the FERC, and the gas company is unable to acquire the needed land by contract or agreement with the owner, the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking." *Maritimes & Northeast Pipeline, L.L.C. v. Decoulos*, 146 Fed.Appx. 495, 498 (1st Cir. 2005); *Millennium Pipeline Co., L.L.C. v. Certain*

---

[1] 15 U.S.C. § 717f(h) provides:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located.... [T]he United States district courts shall only have jurisdiction of the cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

*Permanent & Temp. Easements*, 777 F.Supp.2d 475, 479 (W.D.N.Y. 2011), *aff'd* 552 Fed.Appx. 37 (2d Cir. 2014).

Relying on its FERC Order, Constitution filed the instant action under section 71.1 of the Federal Rules of Civil Procedure against defendants, the owners of the subject property, to take the rights of way on the property necessary to install and construct pipeline facilities as part of the Project. The complaint (Dkt. No. 1) seeks an order and judgment holding that Constitution has the substantive right to condemn the rights of way, fixing the compensation to be paid to defendants for the rights of way, and granting title to the rights of way to Constitution. The complaint avers that the FERC Order covers rights of way described in the complaint and that, although Constitution has offered at least $3,000 for the rights of way, it has been unable to acquire the rights of way by agreement with the landowners.

Currently before the Court are the following motions:

- Constitution's Motion for Partial Summary Judgment (Dkt. No. 4) seeking partial summary judgment holding that Constitution has the substantive right to condemn a permanent right of way and easement and temporary easements as described in Exhibit A to the complaint; and

- Constitution's Omnibus Motion for Preliminary Injunction (Dkt. No. 5) seeking access to, possession of, and entry to the rights of way upon the filing of a bond.

Defendants oppose the preliminary injunction motion. Defendants argue that the easement sought was "unsatisfactory" for various reasons; he does not, however argue that it is beyond the scope of the FERC certificate, and therefore this argument is in essence a collateral attack on the FERC certificate itself, which is not permitted. Once a FERC certificate is issued, judicial review of the FERC certificate itself is only available in the circuit court. *See* 15 U.S.C. §

717r(b); *Millennium Pipeline*, 777 F.Supp.2d at 479; *Kansas Pipeline Co. v. A 200 Foot By 250 Foot Piece of Land*, 210 F. Supp. 2d 1253, 1256 (D.Kan. 2002) ("The district court lacks jurisdiction to review the validity and/or conditions of a FERC certificate.").  As explained by the Tenth Circuit:

> [A] collateral challenge to the FERC order [granting certificate of public convenience and necessity under15 U.S.C. § 717f] could not be entertained by the federal district court. We agree with the appellants that the eminent domain authority granted the district courts under § 7(h) of the NGA, 15 U.S.C. § 717f(h), does not provide challengers with an additional forum to attack the substance and validity of a FERC order. The district court's function under the statute is not appellate but, rather, to provide for enforcement.

*Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 264 (10th Cir. 1989); *accord Guardian Pipeline, LLC v. 529.42 Acres of Land*, 210 F.Supp.2d 971, 974 (N.D.Ill. 2002) ("The jurisdiction of [district] court is limited to evaluating the scope of the FERC Certificate and ordering condemnation as authorized by that certificate").  This argument lacks merit.

Defendants further argue that the FERC Order is "conditioned" upon Constitution's receipt of a certificate under section 401(a)(1) of the Clean Water Act ("CWA"), which requires "[a]ny applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters [to] provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate," and further provides: "No license or permit shall be granted until the certification required by this section has been obtained or has been waived[.]" 33 U.S.C. § 1341(a)(1).  It is undisputed that Constitution's re-application for a CWA 401 certificate is still pending.  Defendants contend that Constitution must wait until it has obtained a CWA 401 certificate before it can initiate eminent domain proceedings.  This argument is

-4-

defeated by a plain reading of the FERC Order in light of relevant case law.  Defendants rely on Ordering Paragraph E, which states in part: "The certificate authority issued [herein] ... shall be conditioned on the following: ... (3) Applicants' compliance with the environmental conditions listed in the appendix to this order."  The Appendix to which Ordering Paragraph E(3) refers includes the following: "8. Prior to receiving written authorization from the Director of OEP [Officer of Energy Projects] to commence construction of their respective project facilities, the Applicants shall file documentation that they have received all applicable authorizations required under federal law (or evidence of waiver thereof)."  Defendants argue that "all applicable authorizations required under federal law" includes the CWA 401 certificate.  In finding that these provisions do not, as defendants argue, create a "condition precedent" such that Constitution cannot commence condemnation proceedings until it has obtained the CWA 401 certificate, the Court observes first that paragraph 8 of the Appendix requires applicants to show that they have received "all applicable authorizations" prior to receiving OEP authorization to commence construction –  not prior to initiating eminent domain proceedings.  Further, Ordering Paragraph E also provides that the certificate authority "shall be conditioned" on "(1) Applicants' completion of the authorized construction of the proposed facilities and making them available for service within 24 months from the date of this order[.]"  Certainly, the completion of construction of the facilities cannot be a condition precedent to Constitution's exercise of eminent domain.  In addition, paragraph 6 of the Appendix requires Constitution to "file updated status reports with the Secretary on a weekly basis until all construction and restoration activities are complete. ... Status reports shall include: (a.) an update on the Applicant's efforts to obtain the necessary federal authorizations[.]"  The requirement of weekly updates on Constitution's efforts

-5-

to obtain federal authorizations clearly presupposes that they have not all been obtained prior to the exercise of eminent domain.  As Constitution points out in its memorandum of law, because many of the environmental conditions in the Appendix can only be satisfied if Constitution has possession of the rights of way, and because some conditions cannot be completed until construction is complete and the Project is placed in service, "if Constitution were not allowed to exercise eminent domain authority until it had satisfied all conditions in the FERC Order, the Project could never be constructed."  The Court agrees; the FERC Order cannot reasonably be read to prohibit Constitution from exercising eminent domain authority until it has complied with all conditions set forth in the Appendix.  *Compare Mid-Atlantic Express, LLC v. Baltimore County, Md.*, 410 Fed.Appx. 653, 657 (4th Cir. 2011) (holding that district court lacked jurisdiction to enter a preliminary injunction awarding immediate possession where FERC Order contained significant restrictions, including: "Mid-Atlantic *shall not exercise eminent domain authority* ... to acquire permanent rights-of-way ... *until* the required site specific residential construction plans have been reviewed and approved in writing by the Director of [OEP]." (emphasis added)).  In contrast to the order in *Mid-Atlantic Express*, the conditions in the FERC Order in the instant case do not expressly restrict Constitution's right to exercise eminent domain, and they do not prevent this Court from granting the relief requested by Constitution.  *See, e.g., Columbia Gas Transmission, LLC v. 370.393 Acres*, 2014 WL 5092880, *4 (D.Md. Oct. 9, 2014) ("A district court's role in proceedings involving FERC Orders is circumscribed by statute, and when a landowner contends that the certificate holder is not in compliance with the certificate, that challenge must be made to FERC, not the court." (citing *Millennium Pipeline*, 777 F.Supp.2d at 281)); *Portland Natural Gas Transmission Sys. v. 4.83 Acres of Land*, 26 F. Supp. 2d 332, 336

-6-

(D.N.H. 1998) ("Compliance with FERC conditions cannot be used as a defense to the right of eminent domain and cannot be cited to divest the court of the authority to grant immediate entry and possession to the holder of a FERC certificate."). The Court rejects the argument that Constitution must wait until it has obtained a CWA 401 certificate before it can initiate eminent domain proceedings.

Defendants also take issue with plaintiff's valuation of the property. This is a matter to be resolved at a later date. If defendants' opposition is read as challenging the amount of the bond plaintiffs propose to post, defendants have not provided a basis for a different valuation. The Court has carefully reviewed all arguments raised by defendants in their opposition to plaintiff's motion for a preliminary injunction and finds that they lack merit. Likewise, to the extent that they are intended as opposition to plaintiff's motion for partial summary judgment, they lack merit.

Plaintiff has demonstrated that it meets the requirements of 15 U.S.C. § 717f(h): it has a certificate of public convenience and necessity issued by FERC; it has not been able to acquire the needed land by contract or agreement with the owner; and the owner has rejected an offer of at least $3,000. Thus, it is authorized to exercise the federal power of eminent domain. *See Millennium Pipeline*, 777 F.Supp.2d at 479. On this record, resolving all ambiguities and drawing all factual inferences in defendants' favor, the Court finds no genuine issue with regard to any material fact. *See Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986). Plaintiff is entitled to partial summary judgment holding that, pursuant to the NGA and the FERC Order, Constitution has the substantive right to condemn a permanent right of way and easement and temporary easements as described in Exhibit A to the complaint.

-7-

Case 1:14-cv-02048-NAM-DJS    Document 17    Filed 02/21/15    Page 8 of 11

With respect to plaintiff's motion for a preliminary injunction, "once a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction." *East Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004). The standard for a preliminary injunction is as follows:

> In order to justify a preliminary injunction, a movant must demonstrate (1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiffs favor; and (3) that the public's interest weighs in favor of granting an injunction. A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.

*Singas Famous Pizza Brands Corp. v. New York Advertising LLC*, 468 Fed.Appx. 43, 45 (2d Cir. 2012) (citations and quotation marks omitted).[2] With respect to the second element, the Court has already determined that Constitution has succeeded on the merits.[3]

Regarding the likelihood of irreparable harm in the absence of the injunction, Constitution points to the provision in the FERC Order requiring Constitution to complete construction of the Project and make the new pipeline facilities available for service within twenty four months of the date of the FERC Order, or by December 2, 2016. The affidavit of Matthew Swift, Constitution's

---

[2] Even if the injunction sought is viewed as a mandatory injunction, which should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief," *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), the Court finds that Constitution has met this standard for the reasons set forth herein.

[3] As the Third Circuit observed in *Columbia Gas Transmission, LLC v. 1.01 Acres*, 768 F.3d 300, 315 (3d Cir. 2014):
> This is not a "normal" preliminary injunction, where the merits await another day. In those situations, the probability of success is not a certainty such that weighing the other factors is paramount. Here, there is no remaining merits issue; we have ruled that Columbia has the right to the easements by eminent domain.

Project Manager, states that if Constitution does not have possession of the rights of way on or about February 16, 2015 for surveys and construction, "there is a likely risk that Constitution will not be able to begin construction in time to allow the Project to be completed by the anticipated in service date of December 2, 2016, which will cause Constitution to fail to comply with the conditions of the FERC Order and to suffer substantial damages." Swift explains:

> 6. The pipeline is approximately 124 miles long, and in order to expedite construction, Constitution has divided the pipeline into 5 construction spreads, each of which will have twelve crews to perform all construction tasks....
> 7. The construction of large-diameter natural gas pipelines is accomplished in linear segments, with a number of different crews performing different functions as part of the overall pipeline spread. Each crew follows the one ahead of it from one end of a construction spread to the other. The crews (and equipment) proceed sequentially in an assembly-like fashion along the construction corridor at a rate (distance per day) that depends on topography, road and stream crossings, and other factors. In addition, there will be specialty crews that typically do not work sequentially with the other crews. The specialty crews perform tasks such as road borings, stream installations, and trenchless crossings of environmentally sensitive areas.
> 8. Pipeline construction begins with tree and vegetation clearing, and installation of environmental controls, followed by grading and trenching. Thereafter, stringing, pipe bending, welding, and coating of the pipe takes place, followed by installation, backfilling, remediation, and restoration. The newly constructed pipeline will then be pressure-tested prior to being placed in service.
> 9. Generally once construction starts, the crews will move sequentially through all of the tasks for each pipeline segment until construction is complete.
> 10. Construction of the Project is also subject to significant restrictions intended to protect the environment and minimize the impact of construction on the environment. These restrictions are time sensitive and interdependent.

The Swift affidavit goes on to explain in substantial detail the construction schedule, the FERC requirements prior to construction, and other restrictions on construction, as well as potential monetary losses. Constitution has demonstrated it will sustain immediate and irreparable harm in the absence of the injunction.

*National Fuel Gas Supply Corp. v. 138 Acres of Land*, 84 F.Supp.2d 405 (W.D.N.Y. 2000), cited by defendants, does not support a contrary result. In that case, district court declined to exercise its equitable powers to grant immediate possession based on its finding that plaintiff had failed to demonstrate that it would suffer an irreparable injury in the absence of a preliminary injunction. In the case at bar, Constitution has made such a demonstration.

Defendants do not claim any specific hardship arising from the granting of a preliminary injunction. Any injury to defendants will arise from the NGA and the FERC Order, and will occur regardless of whether the Court grants a preliminary injunction to Constitution.

Regarding the public interest, Swift explains in his affidavit that the Project "will provide additional natural gas capacity to meet the increased needs of customers in the New York and New England market areas" and "will provide new natural gas service for areas currently without access to natural gas, expand access to multiple sources of natural gas supply, improve operational performance, system flexibility and reliability in the New York and New England market areas and optimize the existing systems for the benefit of both current and new customers." FERC has issued to Constitution a certificate of public convenience and necessity, and has determined that "benefits the Constitution Pipeline Project ... will provide to the market outweigh any adverse effects on existing shippers, other pipelines and their captive customers, and on landowners and surrounding communities." The public's interest weighs in favor of granting a preliminary injunction.

Weighing all of the relevant factors, the Court awards Constitution a preliminary injunction granting access to, possession of, and entry to the rights of way upon the filing of a bond. In setting the amount of the bond, the Court accepts $1,600 as the appraised value of the

-10-

subject property, as set forth in Exhibit A to the declaration of Elizabeth U. Witmer, Esq. (Dkt.

No. 5-1).   Accordingly, the Omnibus Motion for Preliminary Injunction (Dkt. No. 5) is granted

upon the filing of a bond in the sum of $6,400.

       It is therefore

       ORDERED that plaintiff's Motion for Partial Summary Judgment (Dkt. No. 4) is granted,

and the Court will sign the submitted Order; and it is further

       ORDERED that plaintiff's Omnibus Motion for Preliminary Injunction (Dkt. No. 5) is

granted upon the filing of a bond in the sum of $6,400, and the Court will sign the submitted

Order.

       IT IS SO ORDERED.

       Date:   February 21, 2015

**Norman A. Mordue**
**Senior U.S. District Judge**

-11-